UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN C. UHLEIN, III,

                    Plaintiff,                          7:03-CV-1147
                                                        (TJM/GHL)
          v.

FRANK SEYMOUR,

                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICE OF MARK DAVID BLUM                   MARK DAVID BLUM, ESQ.
  Counsel for Plaintiff
P.O. Box 82
Manlius, New York 13104-2311

BRICKWEDDE LAW FIRM                             RICHARD J. BRICKWEDDE, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State Street, Suite 400
Syracuse, New York 13202-2004

GREENE, HERSHDORFER & SHARPE                    THOMAS J. MURPHY, ESQ.
  Counsel for Defendant Frank Seymour
One Lincoln Center, Suite 330
Syracuse, New York 13202

JEFFERSON COUNTY ATTORNEY'S OFFICE              JOHN V. HARTZELL, ESQ.
   Counsel for Proposed Defendant Jefferson County   County Attorney
Jefferson County Office Building
175 Arsenal Street
Watertown, New York 13601

GEORGE H. LOWE, United States Magistrate Judge

## **ORDER**

Currently before the Court in this civil rights action is a motion by Plaintiff for leave to file a Third Amended Complaint.  For the reasons discussed below, this motion is granted.

## I.    **BACKGROUND**

On September 17, 2003, Plaintiff filed a Complaint asserting claims pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  The then-defendants moved to dismiss on a variety of grounds.  (Dkt. No. 6.)  By Decision & Order dated June 24, 2004, Senior District Judge Thomas J. McAvoy granted the motion in part and denied it in part.  (Dkt. No. 15.)  *Inter alia*, Judge McAvoy "dismissed without prejudice to re-pleading" all Section 1983 claims against the County of Jefferson, the Jefferson County Sheriff's Department, and Frank Seymour in his official capacity.

On October 21, 2004, Plaintiff moved for leave to file an Amended Complaint.  (Dkt. No. 31.)  The proposed defendant opposed the motion on the ground of futility, and further briefing followed.  (Dkt. Nos. 32, 34, and 36.)  By Order dated December 29, 2004, I *sua sponte* provided Plaintiff with an opportunity to submit a new motion to amend based upon a revised proposed amended complaint.  (Dkt. No. 37.)  On January 17, 2005, Plaintiff filed a second motion to amend with an attached "Second Amended Complaint."  (Dkt. No. 40.)  The proposed defendants again opposed the motion, again on the ground of futility.  (Dkt. No. 41.)  By Order dated April 20, 2005, I denied Plaintiff's motion with prejudice.  *Uhlein v. County of Jefferson*, 03-CV-1147, 2005 WL928619 (N.D.N.Y. Apr. 20, 2005).

On January 19, 2006, Plaintiff applied for leave to file a third motion to amend his Complaint (given my Order of April 20, 2005 denying *with prejudice* Plaintiff's previous motion

to amend his Complaint).  The ground for granting such leave, according to Plaintiff's counsel,

was the existence of newly discovered evidence, obtained after my Order of April 20, 2005,

which allegedly supports Plaintiff's proposed theory of liability against the County of Jefferson

("the proposed defendant").[1]  By Order dated January 23, 2006, I granted Plaintiff's application

for leave to file a third motion to amend his Complaint.  (Dkt. No. 61.)  I also authorized the

proposed defendant to file an *amicus brief* with respect to such motion to amend, and noted that

the County would not be precluded from arguing that Plaintiff's renewed motion to amend his

Complaint should be denied because Plaintiff's second motion to amend his Complaint had been

denied *with prejudice*.  (*Id.*)

On February 17, 2006, Plaintiff filed a third motion to amend his Complaint, attaching a

proposed Third Amended Complaint.  (Dkt. No. 62.)  On March 10, 2006, the proposed

defendant opposed Plaintiff's motion.  (Dkt. No. 63.)  On March 21, 2006, I heard oral argument

on Plaintiff's motion, and permitted the filing of supplemental letter briefs, which were

subsequently filed by both Plaintiff and the proposed defendant.  (Dkt. Nos. 64, 66.)

## II.    DISCUSSION

### A.    Applicable Legal Standard

"Although Rule 21 [of the Federal Rules of Civil Procedure] governs the addition of new

defendants, in deciding whether to allow joinder under that rule, the Court is guided by the same

standard of liberality afforded to motions to amend under Rule 15."  *Smith v. P.O. Canine Dog

Chas, Shield No. 170*, 02-CV-6240, 2004 U.S. Dist. LEXIS 19623, at *39, n.11 (S.D.N.Y. Sept.

---

[1]        For example, evidence was discovered during the depositions of Defendant, the
Jefferson County Jail Administrator, a mid-ranking official at the Jail, and two guards at the Jail.

28, 2004) [internal quotation marks and citations omitted].

Thus, the plaintiff's motion is governed by Rule 15(a), which explicitly provides that "leave [to amend] shall be freely given when justice so requires." This phrase "when justice so requires" has been interpreted to mean that leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178 [1962]). Here, the County of Jefferson ("the proposed defendant") opposes the motion on the ground that the amendment would be futile.

In my previous Order, I briefly (and perhaps too narrowly) stated the standard for determining if a proposed amended pleading is "futile," implying that the only reason for such futility would be if the proposed amended pleading could be defeated by a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Uhlein*, 2005 WL 928619, at *1 ("A court measures futility under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). While this may be the most common reason that a proposed amended pleading might be "futile" (since most motions to amend are probably filed early in the proceedings, before discovery has been conducted), there are, of course, several other reasons that a proposed amended pleading might be "futile."[2] One such reason might be if the proposed amended pleading could be defeated by a motion for summary judgment under Rule 56.[3]

_____

[2]     *See* 27A *Federal Procedure, Lawyers Edition* § 62:286 "Futility of Amendment" (West, July 2005) (describing the many reasons that a proposed amended pleading might be "futile").

[3]     *See*, *e.g.*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 111 (2d Cir. 2001) ("Under the[] circumstances, the district court correctly applied the summary judgment standard set forth in Fed. R. Civ. P. 56(c)–and not the Fed. R. Civ. P. 12(b)(6) standard for failure to state

4

The distinction between a motion to dismiss and a motion for summary judgment (and their respective standards) is especially important here, where both Plaintiff and the proposed defendant have submitted evidence with their motion papers, and each has advanced legal arguments that vacillate between addressing the failure to "state" a claim (i.e., employing a Rule 12[b][6] analysis) and the failure to "establish" a claim (i.e., employing a Rule 56 analysis). The question, then, is whether the circumstances of this case warrant judging Plaintiff's proposed amended complaint under a Rule 56 standard or Rule 12(b)(6) standard.

From my review of the cases, it appears that, generally, courts that evaluate the futility of a plaintiff's proposed amended complaint under a Rule 56 standard do so because the plaintiff's motion to amend has come after discovery has closed and the defendant has moved for summary judgment. *See, e.g., Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 111 (2d Cir. 2001) ("[W]here . . . [the motion is amend] is made in response to a Fed. R. Civ. P. 56 motion for summary judgment, and the parties have fully briefed the issue of whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions.").[4]

---

a claim–to determine whether granting [plaintiff] leave to amend his complaint would be futile.") [citations omitted].

[4]      *Compare Gursky v. Northwestern Mut. Life Ins. Co.*, 139 F.R.D. 279, 284 (E.D.N.Y. 1991) (not applying Rule 56 standard to Rule 15 motion due to "procedural posture" of case, in which discovery had not yet occurred and defendant had not yet moved for summary judgment) *with Stoner v. N.Y. City Ballet Co.*, 99-CV-0196, 2002 U.S. Dist. LEXIS 5921, at *39 n.11 (S.D.N.Y. Apr. 8, 2002) (applying Rule 56 standard to Rule 15 motion because defendant moved for summary judgment before plaintiff moved to amend), *and Pichardo v. N.Y. Police Dept.*, 98-CV-0429, 2000 U.S. Dist. LEXIS 8238, at *11 (S.D.N.Y. June 13, 2000) (applying Rule 56 standard to Rule 15 motion because defendant moved for summary judgment before plaintiff moved to amend); *see also 131 Main St. Assocs. v. Manko* , 179 F. Supp.2d 339, 345-346 (S.D.N.Y. 2002) (applying Rule 56 standard to Rule 15 motion because defendant moved for

Here, discovery has not yet closed, and Defendant has not moved for summary judgment. Of course, the reason discovery has not yet closed is because Plaintiff filed a third motion to amend (i.e., the Court wished to permit Plaintiff and the proposed defendant have to an opportunity to brief, and have decided, that motion to amend, before discovery closes). Furthermore, the reason no summary judgment motion has been filed is that it is not the current Defendant in the case (i.e., Frank Seymour) but *the proposed defendant* (i.e., County of Jefferson) that has had any real incentive to file such a motion (and the proposed defendant has lacked the standing to file such a motion).[5]  For these reasons, I believe that the bulk of cases applying a Rule 56 analysis to a Rule 15 motion are inapposite.

More instructive, I think, are the few cases that apply a Rule 56 analysis even where no motion for summary judgment has been filed.  Generally, in these cases, the plaintiff has submitted evidence extraneous to his complaint in support of his motion to amend; the defendant has also submitted extraneous evidence in opposition of the motion; and the court bases its conclusion (to apply a Rule 56 analysis) on principles of fairness and judicial economy.[6]

_____

summary judgment *after* plaintiff moved to amend), *accord*, *Montalvo v. Sun Roc Corp.*, 179 F.R.D. 420, 421, 424 (S.D.N.Y. 1998).

[5]      I note that while the proposed defendant may technically also lack standing to oppose this motion to amend, the Court may consider the opposition papers submitted by the proposed defendant under a variety of rules and rationales, including the fact that the Court invited the proposed defendant to file such papers as an *amicus curiae*.  *See*, *e.g.*, Fed. R. Civ. P. 12(h)(3); *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 71 (N.D.N.Y. 2000) (McCurn, J.) (considering papers filed by non-party in opposition to plaintiffs' motion to amend their complaint by treating that non-party as an *amicus curiae*).

[6]      *See Dipace v. Goord*, 308 F. Supp.2d 274, 278-279 (S.D.N.Y.) (report-recommendation applying a Rule 56 analysis to a Rule 15 motion to amend because the plaintiff "invited" such consideration by submitting evidence in support of his motion to amend), *aff'd sub nom. Tortorici v. Goord*, 308 F. Supp.2d 274 (S.D.N.Y. 2004); *Lloyd v. N.Y. Botanical*

6

Under the circumstances, I conclude that it is best to consider the proposed amended complaint under the Rule 12(b)(6) standard, and let the proposed defendant subsequently move for summary judgment (if the proposed amended complaint survives a Rule 12 analysis).  I reach this conclusion for three reasons.  First, I am not sure that Plaintiff and the proposed defendant intended, or were on sufficient notice that, the Court would apply a Rule 56 analysis to Plaintiff's motion to amend.  Second, I am not sure that Plaintiff and the proposed defendant have had a sufficient opportunity to obtain and present all relevant evidence in support of their positions, since discovery is not yet complete (and since the proposed defendant has had only a somewhat limited right to engage in discovery due its current status as a nonparty); thus, a Rule 56 analysis may be premature.[7]  Third, there are numerous ways a properly filed (and opposed) motion for summary judgment would refine, organize and develop the issues to be decided by the Court (e.g., through submission of a Rule 7.1 Statement of Material Facts and a response thereto).[8]

---

*Garden*, 2004 U.S. Dist. LEXIS 18749, at *5-6 (S.D.N.Y. Sept. 17, 2004) (applying a Rule 56 analysis to a Rule 15 motion to amend because "both parties have submitted various exhibits and affidavits on the instant motion [to amend], and these materials cover matters outside the pleadings"); *Republic Nat'l Bank v. Hales*, 75 F. Supp.2d 300, 309 (S.D.N.Y. 1999) ("Such [a Rule 56 analysis on a Rule 15 motion] is especially appropriate where the parties have been afforded ample opportunity for discovery and are on reasonable notice that they will be called upon to demonstrate the existence of disputed, material fact(s)."), *aff'd sub nom. HSBC Bank USA v. Hales*, No. 00-7622, 2001 WL 99830 (2d Cir. Feb. 6, 2001) (unpublished opinion).

[7]       *See Henderson v. Stanton*, 172 F.3d 919, at *2 (D.C. Cir. 1998) (rejecting argument that a court should apply a Rule 56 standard to a motion to amend, where discovery is not yet complete) [collecting cases from other Circuit Courts].

[8]       *See WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980) (Munson, C.J.) ("Although [the proposed defendant] argues that plaintiff's proposed amended complaint is unsupported by the facts . . ., these matters can best be considered in the context of the motion[] . . . for summary judgment.").

### B.    Legal Standard on Motion to Dismiss

To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief,"[9] or the defendant must show that the plaintiff's claim "fails as a matter of law."[10]  Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); or (2) a challenge to the legal cognizability of the claim.[11]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

---

[9]    *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[10]    *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[11]    *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a][2]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8), *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8(a), and the other aimed at the legal sufficiency of the claims).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[12] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[13]  The purpose of this rule is to "facilitate a proper decision on the merits."[14]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[15]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").  However, even this liberal notice

---

[12]     *See Swierkiewicz* 534 U.S. at 511-512, 515.

[13]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[14]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[15]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

pleading standard "has its limits."[16]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[17] "This rule applies with particular force where the plaintiff alleges civil rights violations . . . ."[18]

### C.     Legal Principles of Municipal Liability Claims

The legal principles applicable to establishing municipal liability claims are set forth in Judge McAvoy's Decision & Order of June 24, 2004, in this action.  (Dkt. No. 15, Part III.B.3.) Both Plaintiff and the proposed defendant articulate those legal principles somewhat differently

---

[16]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see*, *e.g.*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[17]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *see also Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).

[18]     *Chance*, 143 F.3d at 701; *see also Hernandez*, 18 F.3d at 136 (citation omitted); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (affirming dismissal under Rule 12[b][6]) (internal quotations and citation omitted).

than does Judge McAvoy.[19]  For example, the proposed defendant merges two of the three elements of a claim of municipal liability (i.e., the policy-or-custom element and the causation element); and Plaintiff does not clearly state, or rely on, those three elements at all (especially the policy-or-custom element, which may be shown through four established ways).  For these reasons, it is important to briefly review the principles applicable to pleading municipal liability claims.

"A municipality may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*."[20]  "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."[21]

"Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its

---

[19]      (*See* Dkt. No. 62, Part 9 at 4-6; Dkt. No. 63, Part 10 at 2-3.)

[20]      *Powell v. Bucci*, 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior*.").

[21]      *Powell*, 2005 WL 3244193, at *5; *Monell*, 436 U.S. at 690-691 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista*, 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York*, 290 F. Supp.2d 317, 321 (S.D.N.Y. 2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[22]

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating either: (1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question . . . ; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials . . . ; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees. . . ."[23]

With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[24]

---

[22]     *Batista*, 702 F.2d at 397, *accord*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), *McKeon v. Daley*, 101 F. Supp.2d 79, 92 (N.D.N.Y. 2000) (Hurd, J.), *Merriman v. Town of Colonie, NY*, 934 F. Supp. 501, 508 (N.D.N.Y. 1996) (Homer, M.J.); *Douglas v. County of Tompkins*, 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. County of Albany*, 594 F. Supp. 1147, 1156 (N.D.N.Y. 1984) (Miner, J.).

[23]     *Dorsett-Felicelli, Inc.*, 371 F. Supp.2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord*, *Dunbar v. County of Saratoga*, 358 F. Supp.2d 115, 133-134 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F. Supp.2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[24]     *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.");

As for the legal principles applicable to *pleading* municipal liability claims (as opposed to establishing such claims), the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) makes clear that there is no "heightened pleading standard" for such claims, but rather those claims are subject merely to the liberal "notice pleading" requirement of Rule 8 (described above in Part II.B. of this Order).[25] However, as I stated in my Order of April 20, 2005, in this matter, it appears uncertain, after the Supreme Court's pronouncements in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), whether Rule 8 permits a plaintiff to state a municipal liability claim through mere conclusory allegations, or whether Rule 8 requires the plaintiff to allege at least minimal facts to state such a claim. *Uhlein*, 2005 WL 928619, at *2-3. Based on my reading of several district court cases from

---

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] . . . we must reverse the judgment below."); *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that . . . an official policy or custom [was] the cause of the deprivation of constitutional rights. . . . [T]he plaintiff must establish a causal connection–an affirmative link–between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell*, 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

[25]     *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) ("We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case [which involved a claim of municipal liability] with the liberal system of 'notice pleading' set up by [Rule 8(a)(2)].").

within the Second Circuit, I concluded in that Order that Rule 8 requires a plaintiff to allege at least minimal facts to state such a claim. *Id*. at *3 (citing cases). I reach the same conclusion in this Order, although I emphasize that the facts necessary to state a such a claim are *minimal*.

For example, such minimal facts were found, by the Supreme Court, to have been alleged in the *Leatherman* case, where the plaintiff's alleged, in pertinent part, that (1) the municipality "failed to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed," and (2) one of the officers, in response to an inquiry by one of the plaintiffs as to why the officers had shot plaintiffs' two dogs during the execution of a search warrant, had responded, that it was "standard procedure."[26]

While the line between sufficient and insufficient allegations may sometimes be so fine as to appear indiscernible, it is important to remember that the purpose of Rule 8(a)(2)'s requirement of "a short and plain statement of the claim" is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

### D.    Summary of Plaintiff's Proposed Third Amended Complaint

Plaintiff's proposed Third Amended Complaint differs from his proposed Second Amended Complaint in only two respects: (1) the addition of a new Paragraph 16, which alleges

---

[26]    *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 755 F. Supp. 726, 730 (N.D. Tex. 1991) (granting Rule 12[b][6] motion to dismiss claim of municipal liability where plaintiffs alleged merely that municipality "failed to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed"), *aff'd*, 954 F.2d 1054, 1056, n.2 (5th Cir. 1992) (noting that plaintiffs also alleged that one of the officers, in response to an inquiry by one of the plaintiffs as to why the officers had shot two dogs during the execution of a search warrant, had responded, that it was "standard procedure"), *rev'd*, 507 U.S. 163 (1993).

14

a "long history" of violence by Defendant Seymour against inmates in the Jefferson County Jail, for which he was not disciplined; and (2) the addition of a new section to Paragraph 32, which alleges 18 facts (listed as Paragraphs "a" through "r") attempting to indicate a policy or custom at the Jefferson County Jail to fail to properly supervise corrections officers in their dealings with prisoners.  (*Compare* Dkt. No. 62, Part 3 [attaching proposed Third Amended Complaint] *with* Dkt. No. 40, Part 3 [attaching proposed Second Amended Complaint].)  Generally, in his proposed Third Amended Complaint, Plaintiff alleges the following.

On or about June 22, 2002, Plaintiff was in custody at the Jefferson County Jail in Watertown, New York.  (Dkt. No. 62, Part 3, ¶ 8.)  At that time, Defendant Frank Seymour was an employee of the County of Jefferson ("the County").  (Dkt. No. 62, Part 3, ¶ 3.)  At approximately 4:30 p.m. on June 22, 2002, Seymour, without any justification or provocation, "used the authority of his office and entered into Plaintiff's locked cell and proceeded to serious [sic] and violently assault Plaintiff."  (Dkt. No. 62, Part 3, ¶ 9.)  The beating "was severe and included choking the Plaintiff, knocking Plaintiff hard against the cell walls, and slamming Plaintiff against the cell floor and bed frame."  (Dkt. No. 62, Part 3, ¶ 10.)  The beating included "punching" and "kicking" by Seymour, and resulted in "physical injury" to Plaintiff.  (Dkt. No. 62, Part 3, ¶¶ 21, 24.)  After the beating, Plaintiff "was taken to a glass-enclosed booking cell where he was held for 11 days and he was prevented from taking a shower or even brushing his teeth."  (Dkt. No. 62, Part 3, ¶ 11.)

With respect to the County, Plaintiff sets forth numerous allegations which may be fairly read as attempting to attribute to the County a policy or custom that caused the alleged assault. All of these allegations appear to relate to the same theory of municipal liability–that the County

of Jefferson failed to train and supervise its subordinates regarding the punishment of, or the use of force against, inmates to such an extent that the County was "deliberately indifferent" to the rights of those inmates.  Specifically, Plaintiff alleges "[t]hat upon information and belief, there exists a policy or custom within the COUNTY OF JEFFERSON and its Sheriffs [sic] Department to fail to train and supervise its Deputies in their dealings with prisoners; to wit, the Department has a . . . policy of overlooking, excusing, and disregarding random and unprovoked acts of violence upon prisoners by Sheriff's Deputies."  (Dkt. No. 62, Part 3, ¶ 28.)

In further support of this theory of liability, Plaintiff sets forth 18 factual allegations attempting to illustrate or exemplify the alleged "failure to train and supervise."  (Dkt. No. 62, Part 3, ¶¶ 32.a.-32.r.)  Generally, these allegations regard (1) the County's and Correctional Facility's failure to discipline or supervise Defendant Seymour despite his "long history" of abusing inmates,[27] (2) the Correctional Facility's conferral upon its corrections officers of unduly broad discretion in how to react to any showing of "disrespect" by inmates, (3) the Correctional Facility's lack of any requirement that corrections officers or "duty sergeants" file a report if corrections officers punish or "keep lock" an inmate, or if they witness "unreasonable" behavior

---

[27]     Specifically, Plaintiff alleges that "[u]pon information and belief, based upon the personnel records of the defendant SEYMOUR, SEYMOUR has a long history of violence towards inmates in the COUNTY OF JEFFERSON Correctional Facility which the defendant COUNTY OF JEFFERSON has documented.  Those same records show the COUNTY OF JEFFERSON has routinely failed to take substantial disciplinary action against the defendant SEYMOUR."  (Dkt. No. 62, Part 3, ¶ 16 [emphasis added].)  Indeed, Plaintiff alleges, "upon reliable information and belief, the defendant COUNTY OF JEFFERSON has taken no disciplinary action against defendant SEYMOUR for SEYMOUR'S actions against Plaintiff."  (Dkt. No. 62, Part 3, ¶ 15.)  Plaintiff alleges that "[u]pon information and belief, by ignoring the wrongful conduct of SEYMOUR that [sic] the COUNTY has a . . . rule or the County has established a custom or policy, of being deliberately indifferent to training violations of conduct such as complained of in this complaint."  (Dkt. No. 62, Part 3, ¶ 32.)

by a corrections officer towards an inmate, (4) the Correctional Facility's lack of any requirement that the "duty sergeants" investigate complaints or reports about abuse or inappropriate discipline by corrections officers, or relay those complaints or reports to the Jail Administrator, and (5) the Correctional Facility's lack of any requirement that the Jail Administrator investigate, or keep records regarding, complaints or reports about abuse or inappropriate discipline by corrections officers.  (*Id.*)

Despite these numerous allegations about the Correctional Facility's and/or County's "failure to train" Defendant Seymour, Plaintiff also alleges that "Defendant SEYMOUR **was specifically trained** not to lay hands on inmates except in certain limited circumstances, none of which applied at the time in question."  (Dkt. No. 62, Part 3, ¶ 29 [emphasis added].)  Similarly, Plaintiff alleges that "Defendant SEYMOUR **was specifically trained** that even if provoked, when an inmate retreats to his cell and locks himself in, no physical force is to be used."  (Dkt. No. 62, Part 3, ¶ 30 [emphasis added].)  Finally, Plaintiff alleges that Defendant Seymour committed "**training violations**" as described in the complaint.  (Dkt. No. 62, Part 3, ¶ 32 [emphasis added].

### E.  Analysis of Plaintiff's Proposed Third Amended Complaint

The proposed defendant analyzes Plaintiff's allegations of municipal liability in light of the four (previously described) ways that a plaintiff may show a custom or policy: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge to the practice of policymaking officials; or (4) a failure by

17

policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.  (Dkt. No. 63, Part 10 at 2-18.)  I will do so as well, addressing each of the four ways in order.

## 1.    Formal Policy Officially Endorsed by Municipality

I agree with the proposed defendant that Plaintiff's proposed Third Amended Complaint may not be fairly construed as stating a claim for municipal liability through the existence of a formal policy officially endorsed by the County of Jefferson (which caused the alleged constitutional deprivation).  (Dkt. No. 63, Part 1 at 3.)

I acknowledge that Plaintiff alleges, in his proposed Third Amended Complaint, that "[u]pon information and belief, SEYMOUR was acting **according to the instructions . . . and official policy and custom** of the COUNTY OF JEFFERSON and its Sheriff's Department." (Dkt. No. 62, Part 3, ¶ 14 [emphasis added].)  However, I cannot ignore the fact that four paragraphs later in the same document, Plaintiff alleges that the "severe beating and assault" was "**contrary to the Rules and Procedures** of the COUNTY OF JEFFERSON and its Sheriffs [sic] Department."  (Dkt. No. 62, Part 3, ¶ 18.)[28]

I assume that Plaintiff is attempting to allege that (1) the County of Jefferson did not officially endorse a formal policy authorizing the use of excessive force against, or unwarranted keep-lock confinement of, inmates in its jail, but that (2) the County of Jefferson had an informal

---

[28]      This inconsistency in Plaintiff's proposed Third Amended Complaint is especially frustrating given that I specifically notified Plaintiff of the exact same inconsistency in his proposed Second Amended Complaint.  *Uhlein*, 2005 WL 928619 at *2 ("Yet, inexplicably, four paragraphs [after ¶ 14] in the same document plaintiff alleges that the 'severe beating and assault' was 'contrary to the Rules and Procedures of the County of Jefferson and its Sheriffs [sic] Department.'").

policy or custom to fail to train or supervise its subordinates in the use of such force or keep-lock

confinements (which caused the alleged assault in question).  In any event, even if Plaintiff is

attempting to allege the existence of an officially endorsed formal policy authorizing the

constitutional deprivations alleged, I find that such allegation is simply too vague, ambiguous,

confusing, unintelligible and disguised to give the proposed defendant "fair notice" of that theory

of municipal liability under Rule 8(a)(2).

> **2.     Actions Taken by Government Official(s) Responsible for Establishing Municipal Policies Related to Particular Deprivation in Question**

I also agree with the proposed defendant that Plaintiff's proposed Third Amended

Complaint may not be fairly construed as stating a claim for municipal liability through the

actions taken by government officials responsible for establishing municipal policies related to

the alleged constitutional deprivation in question (which actions caused the alleged constitutional

deprivation in question).  (Dkt. No. 63, Part 1 at 3-5.)

The highest-ranking government official referenced by Plaintiff in his proposed Third

Amended Complaint is "the Jail Administrator."  (Dkt. No. 62, Part 3, ¶¶ 32.i.-k., 32.n.-r.)  The

problem with these references is that the government official(s) responsible for establishing

county policies related to a particular deprivation--also known as the "final policymaker(s)"--is a

legal question to be answered on the basis of state law.[29]  Generally, as a matter of New York

---

[29]     *See Pembaur*, 475 U.S. at 481-482 ("[W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. . . .  The official must also be responsible for establishing final government policy respecting such activity before

State law, the county sheriff--and not his "Jail Administrator"--is the final policymaker regarding

issues of security and discipline (such as the punishment of, or the use of force against,

inmates).[30]   Accordingly, several cases from within the Second Circuit have held that county

sheriffs, and not jail administrators, are final policymakers with respect to strip searches of

inmates or shackling of inmates.[31]

---

the municipality can be held liable.  Authority to make municipal policy may be granted directly
by legislative enactment or may be delegated by an official who possesses such authority, and of
course, whether an official had final policymaking authority is a question of state law.")
[citations omitted]; *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("Whether the official in
question possessed final policymaking authority is a legal question . . . which is to be answered
on the basis of state law . . . .").

[30]     *See Jeffes*, 208 F.3d 49, at 61 ("State law places the sheriff in charge of the
[county] jail; and the County's chief executive officer . . . treats the sheriff, insofar as Jail
operations are concerned, as 'autonomous. . . .'"), *cert. denied*, 531 U.S. 813 (2000); *Sheriff's
Silver Star Ass'n v. County of Oswego*, 56 F. Supp.2d 263, 267, n.6 (N.D.N.Y. 1999) (McCurn,
J.) ("[C]ourts within this Circuit have found that New York counties can be liable for the
decisions of the sheriff as final policymaker over issues related to jail operations."); N.Y.
Correction Law § 500-b.1. (providing that the county sheriff shall be "the person responsible . . .
for . . . safely keeping persons committed to a county jail"); N.Y. Correction Law § 500-c.1.
("Except as provided in subdivision two of this section [which regards counties within the city of
New York], the sheriff of each county shall have custody of the county jail of such county."); 9
N.Y.C.R.R. 7006.1 ("In order to promote the safety, security and welfare of all inmates and staff
within local correctional facilities, the chief administrative officer of each facility [defined as the
county sheriff in N.Y. Correctional Law §§ 500-b.1., 500-c.1.] shall establish and maintain a
system of inmate discipline designed to set standards of appropriate behavior, encourage self
control and punish misbehavior fairly, impartially and consistently.").

[31]     *See, e.g.*, *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986) (holding that sheriff
was final policymaker with respect to strip/body cavity searches in Monroe County Jail), *cert.
denied*, 483 U.S. 1020 (1987); *Bowman v. City of Middleman*, 91 F. Supp.2d 644, 655-656, 663-
664 (S.D.N.Y. 2000) (holding that plaintiff has not "alleged that any final policymaker made any
decision that resulted in [plaintiff's] being cuffed and shackled" at the Orange County Jail,
despite the fact that plaintiff had alleged that the county "jail superintendent" [Theodore Catletti]
had ordered that plaintiff be shackled); *cf. Lipton v. County of Orange*, 315 F. Supp.2d 434, 453-
456 (S.D.N.Y. 2004) (finding that question of fact existed as to whether the Orange County Jail
"corrections administrator" [Theodore Catletti] was the final policymaker *not with regard to
issues of security and discipline* at the jail but with regard to whether or not to *transfer an inmate*

However, even liberally construed, Plaintiff's proposed Third Amended Complaint does not allege that the *Jefferson County Sheriff* took any actions with regard to the use of excessive force against, or the keep-lock confinement of, inmates (nor does that complaint even *expressly* reference the Jefferson County Sheriff). (Dkt. No. 62, Part 3.)[32] I acknowledge that Plaintiff's counsel, in a letter brief, argues that the "Jail Administrator" (Lieutenant Donald F. Pierce) "declar[ed] that he is 'it' at the jail." (Dkt. No. 66 at 2.) Setting aside the obvious question of whether Lieutenant Pierce's statement meant that he had been *delegated the relevant policymaking authority* by the Sheriff (especially in light of Lieutenant Pierce's other testimony to the contrary),[33] Plaintiff does not allege this fact, in sum or substance, in his proposed Third

---

to the Riker's Island Correctional Facility, given the fact that the Sheriff played no role in that decision under the circumstances).

[32]         I decline to take Plaintiff's counsel up on their rather cavalier offer to submit a Fourth Amended Complaint naming or referencing the Sheriff. (Dkt. No. 66 at 2 ["If this Court should determine as a matter of law that Plaintiff must name the Sheriff or the Jail Administrator in their official capacities so as to attach municipal liability, then Plaintiff is willing to do so. This minor writing error can be corrected and the Sheriff and Lieutenant can be named."].) Plaintiff's counsel have had three bites at the apple to state a valid claim, the last attempt coming after they had the benefit of discovery (including depositions of five employees of the Jefferson County Jail). If they could not describe any actions by the Sheriff in their proposed Third Amended Complaint after all of this time, investigation and deliberation, I can only conclude that they have no reasonable basis to do so. To permit them to throw in the name of the Sheriff, at this point in the action, simply to save Plaintiff's proposed claim against the County of Jefferson, would, I believe, make a mockery of Rule 11 of the Federal Rules of Civil Procedure.

[33]         (*Compare* Dkt. No. 63, Part 16, at 11 ["Q: You're it [at the Jefferson County Jail]. A: Yes.") *with* Dkt. No. 63, Part 16, at 11["Q: Define that job description for me, please. A: Basically I *oversee the operations*, inclusive operations, of the Jefferson County Jail."] [emphasis added] *and* Dkt. No. 63, Part 3, ¶¶ 1, 5 ["I am designated by the Sheriff of Jefferson County to oversee the day to day operations of the Jefferson County Jail. . . . The Sheriff of Jefferson County has the final authority to approval [sic] all policies for operations at the Jefferson County Jail. He has not delegated that authority to me. While I draft Jail policies for the Sheriff's review and approval, no policies are issued unless they are approved and signed by the Sheriff."] *and* Dkt. No. 63, Part 16, at 12 ["Q: Do you write any of the policies or procedures? A: I work

21

Amended (Verified) Complaint–the only relevant document in this Rule 12(b)(6) analysis.[34]

Thus, I find that the proposed Third Amended Complaint does not give the proposed defendant "fair notice" of such a theory of municipal liability under Rule 8(a)(2); and more importantly, even if Plaintiff's proposed Third Amended Complaint did give the proposed defendant such "fair notice," the proposed allegations regarding the "Jail Administrator" would not set forth a legally cognizable claim of municipal liability under Rule 12(b)(6). (*See*, *supra*, Part II.B. [discussing the two grounds upon which a Rule 12(b)(6) motion may be based.].)

### 3. A Practice So Consistent and Widespread that It Constitutes a "Custom or Usage" Sufficient to Impute Constructive Knowledge to Policymaking Officials

I also agree with the proposed defendant that Plaintiff's proposed Third Amended Complaint may not be fairly construed as stating a claim for municipal liability through the existence of a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge to policymaking officials (which practice caused the

---

with a team of people to create them. They are issued under the authority of the Sheriff. Q: Procedurally, you and a group would come up with a proposed rule or procedure and propose it to the Sheriff, and if they [sic] decide to enact it or not, it's at their [sic] discretion? A: Correct."]; *see also* Dkt. No. 63, Part 16, at 40 ["Q: Can you tell me what those situations would be [when sergeants must bring an incident to your immediate attention], or can you give me examples of those? A: I can't give them all to you without looking, there is a policy associated with it . . . ."].

[34]     Nor does Plaintiff allege that the Sheriff, after delegating any authority to Lieutenant Pierce, either failed to supervise Pierce or ratified a decision by *Pierce*–arguably a necessary ingredient of such a claim against the County. *See Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992) ("A plurality [of the Supreme Court in *St. Louis v. Prapropnik*, 485 U.S. 112 (1988)] suggested that where the municipal policymaker delegated some discretion to subordinates, the city should be liable only for the policymaker's delegation and supervision, not the subordinate's exercise of authority. The plurality noted, however, that '[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.' *Id*. at 127.").

22

alleged constitutional deprivation in question).  (Dkt. No. 63, Part 1 at 6-16.)  However, I reach this conclusion generally for reasons other than those stated in the proposed defendant's motion papers, which mostly argue that Plaintiff has failed to *establish* a claim for municipal liability based on the existence of the aforementioned practice (an argument appropriate for a motion for summary judgment, not a motion to dismiss for failure to state a claim).

I acknowledge that Plaintiff's proposed Third Amended Complaint contains several allegations asserting the existence of multiple abuses of inmates by Defendant Seymour (Dkt. No. 62, Part 3, ¶¶ 16, 32.a., 32.l., 32.m.), and implying the existence of multiple abuses of inmates by unidentified "line corrections officers" (Dkt. No. 62, Part 3, ¶¶ 32.b., 32.e., 32.k., 32.m., 32.o.).  It is conceivable that these allegations may be liberally construed as asserting the existence of a "practice" (i.e., regarding the use of excessive force and unwarranted keep-lock confinements) that is "consistent" and perhaps even "widespread."  However, I simply cannot liberally construe those allegations as asserting the existence of a practice that is *so* consistent and widespread that it constitutes a "custom or usage" at the Jefferson County Jail sufficient to impute constructive knowledge to policymaking officials (e.g., the Sheriff).[35]  Indeed, such a

---

[35]     *See Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (affirming district court's granting of motion to dismiss filed by city, and denial of motion to amend filed by plaintiff, because plaintiff's allegation that city knew of its fire department lieutenant's "womanizing" and harassment of women before he raped plaintiff failed to state a discriminatory practice that was so "persistent and widespread" as to rise to the level of a municipal "custom or usage"), *cert. denied*, 520 U.S. 1155 (1997); *cf. Saleh v. City of Buffalo*, 97-CV-0872, 1998 WL 135830, at *1, 4, 5 (W.D.N.Y. 1998) (denying plaintiffs' motion for a preliminary injunction because, in part, even assuming truth of plaintiffs' allegations that six police officers conducted about 25 unlawful searches, seizures and arrests at 17 delicatessens owned and/or operated by plaintiffs over a one-year period, that "evidence" would be insufficient to support a finding that "the unlawful conduct complained of by the plaintiffs is 'so persistent and widespread' as to constitute a municipal custom").

construction of Plaintiff's proposed Third Amended Complaint would be inconsistent with numerous other allegations in that proposed complaint, which assert that reports of improper practices did not rise up the chain of command.  (Dkt. No. 62, Part 3, ¶ 32.d.-i., p.)

Rather, Plaintiff's intended theory of municipal liability appears to be that these abuses, while not necessarily sufficient in number, scope and duration to themselves impute knowledge to the Sheriff or County, were examples or illustrations of the failure (by the Sheriff or County) to train and supervise corrections officers at the Jefferson County Jail with regard to the use of force against, and use of keep-lock confinements of, inmates.  In any event, even if Plaintiff is attempting to allege the existence of a practice so consistent and widespread that it imputes knowledge to policymaking officials, I find that those allegations either (1) are not sufficient to give the proposed defendant "fair notice" of that theory of municipal liability under Rule 8(a)(2), or (2) do not set forth a legally cognizable claim of municipal liability under Rule 12(b)(6).

**4.      A Failure by Policymakers to Train or Supervise Subordinates to Such an Extent that It Amounts to "Deliberate Indifference" to the Rights of Those Who Come in Contact with the Municipal Employees**

I cannot agree with the proposed defendant that Plaintiff's proposed Third Amended Complaint may not be liberally construed as stating a claim for municipal liability through a failure by policymakers (i.e., the Sheriff or County) to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees (which failure caused the alleged constitutional deprivation in question).  (Dkt. No. 63, Part 1 at 16-18.)

Drawing on the principles set forth in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the Second Circuit has discerned "three requirements that must be met before a

24

municipality's failure to train or supervise constitutes deliberate indifference to the constitutional

rights of citizens." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992).

> First, the plaintiff must show that a policymaker knows 'to a moral
> certainty' that [his or] her employees will confront a given situation.
> . . . Second, the plaintiff must show that the situation either presents
> the employee with a difficult choice of the sort that training or
> supervision will make less difficult or that there is a history of
> employees mishandling the situation. . . . Finally, the plaintiff must
> show that the wrong choice by the city employee will frequently cause
> the deprivation of a citizen's constitutional rights. . . .

*Walker*, 974 F.2d at 297-298.

A brief discussion of *Walker*--in which the Second Circuit applied these three

requirements in reversing a Rule 12(b)(6) dismissal of a civil rights complaint against a police

department and a district attorney's office for failure to train and supervise its subordinates--is

instructive.  In pertinent part, the Second Circuit acknowledged that, while the plaintiff alleged

that the police department failed to train and supervise its officers not to commit or suborn

perjury (thus stating the first and third elements described above), the plaintiff failed to allege

that the decision of whether or not to commit or suborn perjury involved a difficult choice of the

sort that training or supervision will make less difficult; and he failed to "expressly" allege a

history of police perjury (thus arguably failing to state the second element described above).  *Id*.

at 299-300.  However, the Court found that it did not appear beyond doubt that the plaintiff could

not prove a set of facts showing a history of police perjury.  *Id*. at 300.  Thus, concluded the

Court, a Rule 12(b)(6) dismissal was inappropriate.

Here, as in *Walker*, I believe that, liberally construed, Plaintiff's proposed Third

Amended Complaint alleges that the Jefferson County Sheriff's Department failed to train and

supervise its subordinates regarding the proper use of force against, and the proper keep-lock confinement of, inmates.  Thus, I believe he has stated the first and third elements described above.  Moreover, even assuming that when to properly use force against and keep-lock inmates are "obvious" matters of "common sense," Plaintiff has expressly alleged a "long history" of excessive force against inmates by Defendant Seymour (Dkt. No. 62, Part 2, ¶¶ 16, 32.a.); and he has implicitly alleged prior instances of excessive force against, and unwarranted keep-lock confinement of, inmates by unidentified "line corrections officers" (Dkt. No. 62, Part 3, ¶¶ 32.b.-32.e., 32.h., 32.k., 32.m., 32.o.).  Thus, I believe he has stated the second element described above.

The proposed defendant argues, in a letter brief, that the proposed Third Amended Complaint fails to identify a municipal actor with policymaking authority, and that "[i]t is widely accepted in § 1983 practice that a failure to identify a municipal actor with policymaking authority warrants dismissal of a complaint."  (Dkt. No. 64 at 2.)  With due respect to the proposed defendant (and with gratitude for filing papers as "a friend of the Court"), I find that, of the ten cases cited in support of this proposition, seven are distinguishable from the current case in that they do not involve the invocation of a "custom or policy" that consisted of a failure to train or supervise.  (Like the third type of custom or policy, i.e., a "consistent and widespread" practice, the failure-to-train-or-supervise type of custom or policy focuses on why knowledge should be imputed to the policymaker, and not on the pronouncements or authority of the policymaker.)  Moreover, of the three cases that are on point (only one of which is from within the Second Circuit), each of them involved a complaint that was unlike the proposed complaint

in this case.[36]  Plaintiff's proposed Third Amended Complaint--though often inconsistent and

poorly written--has met the low threshold for identifying a municipal actor with final

policymaking authority, namely, the Jefferson County Sheriff.[37]  Under the circumstances, I

conclude that the proposed defendant has "fair notice" of Plaintiff's failure-to-train-and-

supervise theory of municipal liability under Rule 8.

The proposed defendant might argue that Plaintiff's proposed failure-to-train allegations

(in particular) do not give the proposed defendant fair notice of Plaintiff's claim, since those

---

[36]     *See Vercillo v. Town/Village of Harrison*, 01-CV-4734, 2002 WL 465338, at *2
(S.D.N.Y. March 26, 2002) (detailing the deficiencies of plaintiff's failure-to-train-and-supervise
claim, which concerned only one incident, failed to identify any policy or custom other than the
municipality's practice of stopping drivers under the influence of alcohol or drugs, and failed to
suggest any facts regarding the allegedly deficient-training policies); *Gast v. Singleton*, 402 F.
Supp.2d 794, 799-800 (S.D. Tex. 2005) (detailing the inadequacies of plaintiff's failure-to-train-
and-supervise claim which, rather than having offered any specifics–appears to have simply
relied on the *res ipsa loquitur* doctrine); *Doe v. Hudgins*, 97-CV-0106, 1998 WL 474122, at *5-
7, & n.5 (N.D. Ill. 1998) (accepting plaintiffs' withdrawal of their failure-to-train claim, and
detailing the deficiencies in plaintiffs' failure-to-supervise claim, which included no allegation
that "any . . . officer other than [defendant] engaged in this type of wrongdoing.").

[37]     (*See, e.g.*, Dkt. No. 62, Part 2,¶ 7 ["Each and every act of every defendant herein
was committed by the defendants . . . under . . . the authority, customs and usage of authority . . .
inherent to the Offices of the Jefferson County Sheriffs [sic] Department by virtue of . . .
statutory authority, regulations, and ordinances of the State of New York. . . . "], ¶ 14 ["Upon
information and belief, SEYMOUR was acting according to the instructions, training and official
policy and custom of the COUNTY OF JEFFERSON and its Sheriff's Department."], ¶ 28
["That upon information and belief, there exists a policy or custom within the COUNTY OF
JEFFERSON and its Sheriffs [sic] Department to fail to train and supervise its Deputies in their
dealings with prisoners; to wit, the Department has a written or unwritten policy of overlooking,
excusing, and disregarding random and unprovoked acts of violence upon prisoners by Sheriff's
Deputies."], ¶ 32 ["Upon information and belief . . . the COUNTY has established a custom or
policy . . . of being deliberately indifferent to training violations of conduct such as complained
of in this complaint.  That at the Jefferson County Correctional Facility, run by the Jefferson
County Sheriff's Department[,] there are policies and customs which sufficiently fail to properly
supervise Corrections Officers in their dealings with prisoners such that this failure to supervise
rises to the Constitutional standard of DELIBERATE INDIFFERENCE . . . ."].)

27

allegations are inconsistent with certain other allegations in Plaintiff's proposed complaint, which assert or imply that Defendant Seymour was violating his prior training when he committed the constitutional deprivations alleged.  (Dkt. No. 62, Part 3, ¶¶ 29, 30, 32.)  I infer that Plaintiff is attempting to allege that (1) Plaintiff was initially trained not to commit such constitutional deprivations but that the training was inadequate, and (2) upon receiving constructive notice that Defendant Seymour's training was inadequate, the Sheriff failed to give Defendant Seymour further training.  In any event, even if this inference is incorrect and there is simply an inconsistency in Plaintiff's proposed complaint, I find that, given the proposed complaint's other references to Plaintiff's failure-to-train theory, such an inconsistency would not prevent the proposed defendant from receiving "fair notice" under Rule 8.[38]

My conclusion that Plaintiff's claim, as articulated, is sufficient for purposes of Rule 8 is reinforced by the fact that the Second Circuit liberally construed the plaintiff's failure-to-train-and-supervise claim against a municipality in *Walker* in 1992–even before the Supreme Court's pronouncements in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (discussed above in Parts II.B. and II.C. of this Report-Recommendation).

---

[38]    *See* Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim . . . alternately . . . .  When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements."); Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."); *see, e.g., Henry v. Daytop Village, Inc.*, 42 F.3d 89, 94-95 (2d Cir. 1994) (even if plaintiff's civil rights claims were somehow inconsistent, court could and would entertain them both); *cf. Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("Dismissal [on the basis of lack of plainness] . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

I note that, in the *Leatherman* case, the Supreme Court found that plaintiffs had sufficiently plead a claim of municipal liability against a municipality based on a failure to train and supervise, where the plaintiffs alleged, in pertinent part, that (1) the municipality "failed to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed," and (2) one of the officers, in response to an inquiry by one of the plaintiffs as to why the officers had shot plaintiffs' two dogs during the execution of a search warrant, had responded, that it was "standard procedure."[39]

As the Supreme Court concluded in *Leatherman*, "In the absence of . . . an amendment [to Rule 8 of the Federal Rules of Civil Procedure], federal courts must rely on summary judgment and control of discovery to weed out unmeritorious claims."[40]

## F.    Analysis of Proposed Defendant's "Rule 60"Argument

During the hearing on Plaintiff's motion, and in a letter brief, the proposed defendant argued that an alternative ground exists for denying Plaintiff's motion to file a Third Amended Complaint: Plaintiff has not made a sufficient showing of new evidence, as required by Fed. R. Civ. P. 60, to be relieved of the preclusive effect of the Court's Order of April 20, 2005, which denied Plaintiff's motion to file a Second Amended Complaint *with prejudice*.  (Dkt. No. 64 at

---

[39]     *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 755 F. Supp. 726, 730 (N.D. Tex. 1991) (granting Rule 12[b][6] motion to dismiss claim of municipal liability where plaintiffs alleged merely that municipality "failed to formulate and implement an adequate policy to train its officers on the Constitutional limitations restricting the manner in which search warrants may be executed"), *aff'd*, 954 F.2d 1054, 1056, n.2 (5th Cir. 1992) (noting that plaintiffs also alleged that one of the officers, in response to an inquiry by one of the plaintiffs as to why the officers had shot two dogs during the execution of a search warrant, had responded, that it was "standard procedure"), *rev'd*, 507 U.S. 163 (1993).

[40]     *Leatherman*, 507 U.S. at 168-169.

1.)  Plaintiff responds that, while "Rule 60 provides the statutory framework for the relief sought

by Plaintiff," he should be excused from this "new evidence" requirement since "[a]ll of [the]

facts referenced in the proposed amended Complaint were not known or available to Plaintiff

prior to the depositions that yielded the party admissions."  (Dkt. No. 66 at 1.)  Alternatively,

Plaintiff argues that the "law of the case" doctrine is discretionary, not binding on the Court.

(*Id.*)

       Neither Plaintiff nor the proposed defendant cited any cases indicating that Rule 60 (as

opposed to some other rule or standard) governs my reconsideration of my Order of April 20,

2005.[41]  My review of relevant cases suggests that Rule 60 does not in fact govern my

reconsideration of that Order.[42]  Nor is my reconsideration of that Order governed by Rule

---

[41]    Rule 60 provides, in pertinent part:

> On motion and upon such terms as are just, the court may
> relieve a party . . . from a final judgment, order, or proceeding for the
> following reasons: (1) mistake, inadvertence, surprise, or excusable
> neglect; (2) newly discovered evidence which by due diligence could
> not have been discovered in time to move for a new trial under Rule
> 59(b); . . . or (6) any other reason justifying relief from the operation of
> the judgment.

Fed. R. Civ. P. 60(b).

[42]    *See, e.g., Makas v. N.Y. State DMV*, 97-CV-1892, 1998 U.S. Dist. LEXIS 6303, at
*1-2 & n.1 (N.D.N.Y. Apr. 29, 1998) (McCurn) (noting that plaintiff's motion for
reconsideration of the Court's Order of 3/23/98 denying plaintiff's cross-motion to amend his
complaint is not made pursuant to Rule 60 because "Rule 60(b) only applies to final judgments
and orders"); *see also Aini v. Sun Taiyang Co.*, 174 F.R.D. 327, 329 (S.D.N.Y. 1997) (finding
that Rule 60[b] does not apply to reconsideration of denial of motion to amend interlocutory
judgment to permit assertion of another claim, because that denial did not dispose of all the
claims as to all of the parties) [citations omitted].  I note that my Order of April 20, 2005, did not
dismiss any part of this action, but rather denied Plaintiff permission to re-file a (previously
dismissed) claim against the County.

59(e).[43]  Rather than coming from any specific Federal Rule of Civil Procedure, a federal judge's

authority to reconsider an order such as my Order of April 20, 2005, comes from an inherent

power to revisit interlocutory orders.[44]

Generally, in this District, reconsideration of an order by the court is appropriate upon a

showing of "(1) an intervening change of controlling law, (2) the availability of new evidence not

previously available, and (3) the need to correct a clear error of law prevent manifest injustice."[45]

I find no reason to depart from this general rule in this case.[46]

Here, I find that Plaintiff has, through the filing of his papers in support of his motion for

leave to file a Third Amended Complaint, shown that his proposed pleading resulted from the

availability of new evidence not previously available to him.  Specifically, the new paragraphs

contained in the proposed Third Amended Complaint (i.e., Dkt. No. 62, Part 3, ¶¶ 16, 32) appear

---

[43]     Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."); *cf.*, *Ford v. Conway*, 03-CV-9275, 2005 U.S. Dist. LEXIS 3945, at *3 (W.D.N.Y. Feb. 1, 2005) (deciding plaintiff's motion for reconsideration of denial of his motion to amend his complaint under Rule 59[e] because denial of motion to amend had been accompanied by dismissal of entire proceeding with prejudice) [citations omitted].

[44]     *Burke v. Warren County Sheriff's Dep't*, 916 F. Supp. 181, 186 (N.D.N.Y. 1996) (Munson, J.) ("[T]he court is not limited by Rule 60(b), but reviews the current motion pursuant to its inherent power to revisit interlocutory orders.").

[45]     *In re C-TC 9ᵗʰ Ave. Partnership*, 182 B.R. 1, 3 (N.D.N.Y. 1995) (McAvoy, C.J.) [citations omitted].

[46]     *See*, *e.g.*, *Aquillo v. Manaker*, 90-CV-0045, 1992 U.S. Dist. LEXIS 8725, at *9-13 (N.D.N.Y. June 19, 1992) (McCurn, J.) (not citing any federal rule in deciding plaintiff's motion for reconsideration of denial of his motion to amend his complaint, but analyzing whether there had been an intervening change of controlling law); *see also Carter v. Artuz*, 95-CV-2361, 1999 U.S. Dist. LEXIS 8338, at *8-13 (S.D.N.Y. June 1, 1999) (not citing any federal rule in deciding plaintiff's motion for reconsideration of denial of his motion to amend his complaint, but simply analyzing whether proposed amended pleading alleged any new facts).

to have resulted from information obtained by Plaintiff's counsel during five depositions conducted, and several documents obtained, in this case after April 20, 2005.  As for any argument as to whether or not Plaintiff could have obtained this information before April 20, 2005, I note that the parties had participated in little discovery before that date, and a Uniform Pretrial Scheduling Order (setting deadlines for discovery) had not been filed yet.  (*See* Dkt. No. 49 [Scheduling Order, filed on 5/31/05].)

Under the circumstances, I excuse Plaintiff's violation of Local Rule 7.1(g) of the Local Rules of Civil Procedure (requiring such motions for reconsideration to be filed no later than ten calendar days after entry of the challenged judgment, order or decree; and requiring such motions to be made in writing, with a memorandum of law and supporting affidavit).

### G.    Analysis Under Rule 11

The proposed defendant argues that several allegations in the proposed Third Amended Complaint, and several assertions in an affidavit filed by plaintiff's counsel, are, not only devoid of any factual basis, but indeed flatly contradicted by evidence obtained during discovery.  (*See generally* Dkt. No. 63, Part 10, at 6-18.)  Upon a cursory examination, it appears this argument may have some merit.[47]

---

[47]    (*Compare* Dkt. No. 62, Part 3, ¶ 32.e. ["Twenty six year ***veterans*** of the jail ***do not even know what to do*** if they encountered a Line Officer Corrections Officers [sic] misbehaving."] [emphasis added] *with* Dkt. No. 62, Part 2, ¶ 23 [plaintiff's counsel's affidavit, describing only one such veteran] *and* Dkt. No. 63, Part 14 at 39 [deposition transcript of Officer Cohen, reflecting the following exchange: "Q: If you were to see a Corrections Officer applying what you felt was an unfair or unreasonable amount of force, what would you do? . . .  A: I haven't seen it.  Q: You have never seen it so you don't know what you would do?  A: Correct."], *and* 38-39 [reflecting the previous exchange: "Q. [I]f you got a report from somebody inside the facility that said Corrections Officer so and so used an unfair and unreasonable amount of force, but the inmate didn't file a grievance and there was no order from above, your testimony is you would do what? A: Talk to the sergeant. . . .  Q: Is that in accordance with Jail policy?  A:

32

Plaintiff's counsel are reminded of their duties under Rule 11.[48]  If I find, after the filing of the proposed defendant's inevitable motion for summary judgment, that certain factual allegations (or affidavit testimony) proffered by Plaintiff or his counsel are utterly lacking in evidentiary support, I will seriously consider imposing Rule 11 sanctions on Plaintiff and/or his counsel.[49]

---

I have to talk with the sergeants, keep them appraised of what is happening, and take it to the next level."]; *compare* Dkt. No. 62, Part 3, ¶ 16 ["Upon information and belief, based upon the personnel records of the defendant SEYMOUR, SEYMOUR has a long history of violence towards inmates in the COUNTY OF JEFFERSON Correctional Facility which the defendant COUNTY OF JEFFERSON has documented.  Those same records show the COUNTY OF JEFFERSON has **routinely** failed to take **substantial** disciplinary action against the defendant SEYMOUR."] [emphasis added] *with* Dkt. No. 62, Part 2, ¶¶ 5-10, 17 [plaintiff's counsel's affidavit, describing eight instances of use of force by Defendant Seymour, four of which resulted in counseling, three resulted in disciplinary action including censure, and one resulted in suspension]; *compare* Dkt. No. 62, Part 2, ¶ 24 [plaintiff's counsel's affidavit, asserting, "Lt. Pierce testified in his deposition that only one officer had been suspended for **misconduct** during Pierce's 14 year term of office as Jail Administrator. . . .  Defendant was apparently the only person suspended in a number of years . . . ."] [emphasis added] *with* Dkt. No. 63, Part 17 at 53-54 [deposition transcript of Lt. Pierce, reflecting the following exchange: "Q: In the fourteen years in which you have been Jail Administrator, how many corrections officers have been suspended at least once for allegations of **excessive force**?  A: To my knowledge, once."] [emphasis added] *and* Dkt. No. 63, Part 3, ¶ 12 [affidavit of Lt. Pierce, identifying that corrections officer as Jamie Beutel, not Defendant Seymour].)  In addition, I repeat that Plaintiff's counsel failed to correct or clarify the inconsistency between ¶ 14 and ¶ 18 of Plaintiff's proposed Third Amended Complaint, despite having been notified of that inconsistency from the Court's Order of April 20, 2005.  *Uhlein*, 2005 WL 928619, at *2.

[48]      *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.").

[49]      *See*, *e.g.*, *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) (imposing Rule 11 sanctions on plaintiffs' counsel, consisting of the award of a portion of defendants' attorneys' fees, based on plaintiffs' counsel having filed, *inter alia*, affidavits that contradicted plaintiffs' earlier deposition testimony); *Soler v. G & U, Inc.*, 138 F.R.D.47, 48-49 (S.D.N.Y. 1991)

33

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for leave to file a "Third Amended Complaint" (Dkt.

No. 62) is **<u>GRANTED</u>**.

Dated: April 6, 2006
         Syracuse, New York


                                        _George H. Lowe_
                                        George H. Lowe
                                        United States Magistrate Judge

---

(imposing Rule 11 sanctions on counsel, consisting of the award of plaintiffs' attorneys' fees and
costs, based on arguments raised by counsel in motion papers due to inaccurate references to
record and failure to correct inaccuracies when they were brought to counsel's attention).